P Send





# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETTLEMENT RECOVERY CENTER, LLC, a California Limited Liability Company, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>VALUECLICK, INC., COMMISSION JUNCTION, INC., and BE FREE,<br><br>    Defendants. | 2:07-cv-02638-FMC-CTx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>**#30** |

This matter is before the Court on Defendants Value Click, Inc., Commission Junction, Inc., and Be Free's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (docket no. 11), and Defendants' Motion to Strike Requests for Certain Relief (docket no. 12), filed on June 13, 2007. The Court has read and considered the moving, opposition, and reply documents submitted in connection with both motions. The Court deems the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons and in the manner set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and **DENIES** Defendants' Motion to Strike.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1

2    Defendant Commission Junction is a corporation that provides affiliate

3  marketing management services to entities involved in internet sales and

4  advertising. (Compl. ¶ 9.) Affiliate marketing is a practice by which an online

5  publisher, such as a website or email list owner, agrees to place an advertiser's

6  ads or links in the publisher's material. (*Id.*) Advertisers join the Commission

7  Junction affiliate network (CJ Affiliate Network), sign an advertiser service

8  agreement, and upload their offers onto the CJ Affiliate Network . (*Id.* at ¶ 11.)

9  Affiliates then apply with Commission Junction to join an advertiser's affiliate

10  marketing program, and, once the advertiser accepts them, begin placing

11  advertiser's ads or links. (*Id.* at ¶ 11.)  Every Commission Junction affiliate must

12  agree to the terms of the Publisher Service Agreement and Publisher Code of

13  Conduct and advertisers who joint the CJ Affiliate Networks reasonably expect

14  that all affiliates are bound by the terms of those agreements. (*Id.* at ¶ 40).

15  Whenever an end-user (i.e., consumer) uses these ads or links to undertake an

16  action agreed upon in the advertiser's affiliate marketing program, such as

17  visiting the advertiser's web-site or purchasing the advertiser's product,

18  Commission Junction tracks the event. (*Id.* at ¶ 11.) The advertiser pays, through

19  Commission Junction, a commission for each event tracked. (*Id.*) As

20  compensation for its services, Commission Junction also collects a fee from the

21  advertiser for each qualifying transaction. (*Id.*)

22    Plaintiff is a merchant that offers class action settlement services via

23  offline and online advertising. (*Id.* at ¶ 2.) Plaintiff contracted with Defendants

24  for affiliate marketing management services related to its online advertising and

25  internet sales. (*Id.*)  Plaintiff alleges that Commission Junction does not take

26  reasonable steps to eliminate Adware Affiliates from its affiliate networks. (*Id.* at

27  ¶ 37.) Adware refers to software programs that interfere with publishers'

28  commissions (*Id.* at ¶ 16), either by redirecting legitimate commissions from

2

1  publishers (*Id.*) or by creating false transactions in order to collect unearned

2  commissions from advertisers (*Id.* at ¶ 21). Plaintiff alleges that Adware

3  Affiliates violate the provisions of the Publisher Service Agreement and

4  Publisher Code of Conduct (*Id.* at ¶¶ 41-45), yet Commission Junction, which

5  has actual and constructive notice of the adware problem (*Id.* at ¶¶ 31-36), takes

6  no action to punish them because Commission Junction profits from their use of

7  the network (*Id.* at ¶¶ 49-55).

8    On April 20, 2007, Plaintiff filed a class action complaint, on behalf of all

9  persons and/or entities that entered into an advertiser agreement for affiliate

10  management services on the Commission Junction affiliate networks relating to

11  their online advertising and internet sales, asserting claims for breach of contract,

12  negligence, unjust enrichment and unfair business practices under Cal. Bus. &

13  Profs. Code §17200. On June 13, 2007, Defendants filed the instant Motion to

14  Dismiss and Motion to Strike Requests for Certain Relief.

15                              **STANDARDS OF LAW**

16    Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant

17  to seek dismissal of a complaint that fails to state a claim upon which relief can

18  be granted. Fed. R. Civ. P. 12(b)(6). The Court will not dismiss claims for relief

19  unless the plaintiff cannot prove any set of facts in support of the claims that

20  would entitle her to relief. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002);

21  *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

22  All material factual allegations in the complaint are assumed to be true and

23  construed in the light most favorable to the plaintiff. *Nursing Home Pension*

24  *Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1229 (9th Cir. 2004) (citing

25  *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir.

26  2000). However, the Court "is not required to accept legal conclusions cast in the

27  form of factual allegations if those conclusions cannot be reasonably drawn from

28  the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir.

1   1994) (internal citations omitted).

2       A motion to dismiss may be based on matters subject to judicial notice.

3   *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).

4   Moreover, the Court need not accept as true allegations that contradict matters

5   properly subject to judicial notice or by exhibit. *Foster Farms Poultry, Inc. v.*

6   *Suntrust Bank*, 355 F. Supp. 2d 1145 (E.D. Cal. 2004); *Sears, Roebuck & Co. v.*

7   *Metropolitan Engravers*, Ltd., 245 F.2d 67, 70 (9th Cir. 1956).

8       If the Court dismisses the complaint, it must decide whether to grant leave

9   to amend. Denial of leave to amend is "improper unless it is clear that the

10  complaint could not be saved by any amendment." *Livid Holdings Ltd. v.*

11  *Salomon Smith Barney, Inc.*, 403 F.3d 1050, 1055 (9th Cir. 2005).

12                              **DISCUSSION**

13  **I.    Motion to Dismiss**

14      *A.    Impact of Alleged Disclaimer of Warranties*

15      Defendants argue that Plaintiff's claims for breach of contract, violation of

16  California's Unfair Competition Law[1] (UCL), unjust enrichment and negligence

17  are precluded by an express disclaimer that releases Defendants from liability for

18  the conduct of third-party publishers. Defendants allege that this "Disclaimer

19  ofWarranties" is part of the Advertiser Service Agreement that the parties entered

20  into on an unspecified date. (Mot. to Dismiss 6:14-25.) Defendants have attached

21  an unsigned, undated copy of the alleged agreement to their Motion. (*See* Mot. to

22  Dismiss, Ex. A.)

23      Defendants contend that the Court may consider the "Disclaimer of

24  Warrities," as well as the entire Advertiser Service Agreement, as part of

25  Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) because the agreement

26  _____

27      [1] California Business and Professions Code section 17200 *et seq.*

28

4

1  is incorporated by reference in Plaintiff's Complaint. Although courts may not

2  generally consider any material beyond the pleadings in a Rule 12(b)(6) motion,

3  "material which is properly submitted as part of the complaint may be

4  considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

5  1555 (9th Cir. 1989). In addition, a court may consider evidence on which a

6  complaint "necessarily relies" even if the document is not attached to the

7  complaint if: "(1) the complaint refers to the document; (2) the document is

8  central to the plaintiff's claim; and (3) no party questions the authenticity of the

9  copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th

10  Cir. 2006); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding "that

11  documents whose contents are alleged in a complaint and whose authenticity no

12  party questions, but which are not physically attached to the pleading, may be

13  considered in ruling on a Rule 12(b)(6) motion to dismiss" and that "[s]uch

14  consideration does not convert the motion to dismiss into a motion for summary

15  judgment.") (internal quotations omitted).

16      In the instant case, Plaintiff has questioned the authenticity of the

17  Advertiser Service Agreement attached to Defendants' Motion. In addition, the

18  "Disclaimer of Warranties" is not referenced or quoted in Plaintiff's Complaint.

19  Accordingly, the Court may not consider the document or disclaimer at this stage

20  of the litigation and must reject Defendants' arguments regarding their impact on

21  Plaintiff's claims.

22      ***B.    Negligence***

23      Defendants argue Plaintiff has failed to identify any duty that would give

24  rise to a negligence claim.  In order to assert a claim based on negligence, a

25  plaintiff must generally establish that a duty of care was owed, that the duty was

26  breached, that there was the requisite proximate cause, and resulting damages.

27  *Paz v. State of California*, 22 Cal. 4th 550, 559, 93 Cal. Rptr. 2d 703 (2000).

28  Plaintiff responds that Defendants owed Plaintiff an independent duty of care

1   with Plaintiff's money, arguing that Defendants undertook the duty of care that a

2   bailor owes a bailee.

3        In California, the traditional bailee/bailor language has been replaced by

4   language that would denominate Defendants the "depositary" and Plaintiff the

5   "depositor." *See* Cal. Civ. Code § 1814 *et seq.* A bailment is referred to as a

6   "deposit." *Id.*  However, Plaintiff's argument fails because California Civil

7   Code section 1925 expressly excludes money from the concept of bailment. *See*

8   Cal. Civ. Code §1925; *Credit Managers' Assn. v. Brubaker* 233 Cal.App.3d

9   1587, 1592 (Cal.App. 2 Dist.,1991).  Plaintiff cites no authority for the

10  proposition that Defendants had an independent duty to monitor its networks for

11  adware or to protect Plaintiff from adware, nor has the Court's research

12  discovered any.  There is no special relationship between Defendants and

13  Plaintiff which would give rise to any such duty.  Accordingly, Plaintiff has

14  failed to state a cause of action for negligence, and Defendants' motion to

15  dismiss with respect to Plaintiff's second claim is granted.

16  **C.   *Unjust Enrichment***

17       To survive a Motion to Dismiss, Plaintiff's unjust enrichment claim must

18  allege "receipt of a benefit and unjust retention of the benefit at the expense of

19  another." *Westways World Travel*, 182 F.Supp.2d at 963-64 (quoting

20  *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881, 883

21  (2000)).

22       Here, Plaintiff alleges that Defendants received and retained money at the

23  expense of Plaintiff and members of the purported class. (Compl. ¶¶ 100-101.)

24  However, Plaintiff's Complaint indicates that Plaintiff contracted with

25  Defendants for affiliate marketing management services related to its online

26  advertising and internet sales. (Compl. ¶2).  Defendants argue that the Northern

27  District of California has held that an action for unjust enrichment is not possible

28  where an express contractual relationship exists between the two parties.

1  *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838, 856 (N.D.Cal. 2004)

2  (explaining that, under the California Commercial Code, a direct purchase creates

3  an express contract between the buyer and seller, Cal. Com. Code §§ 2106(1) &

4  2204(1), rendering an action in quasi-contract is inappropriate). "Even though

5  Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state

6  multiple, even inconsistent claims, it does not alter a substantive right between

7  the parties and accordingly does not allow a plaintiff invoking state law to an

8  unjust enrichment claim while also alleging an express contract." *Id.* (citations

9  omitted); *see also Slattery v. Apple Computer, Inc.*, 2005 WL 2204981, *5 (N.D.

10  Cal. 2005) (dismissing common law unjust enrichment claim where Plaintiff had

11  alleged formation of contract when consumers purchase either an iPod or a music

12  file from defendants). However, in *Westways World Travel*, the Central District

13  permitted both a breach of contract and an unjust enrichment claim to proceed at

14  the Motion to Dismiss stage where the plaintiffs had alleged sufficient facts to

15  state each claim. *Westways World Travel*, 182 F.Supp.2d at 963-64.

16      Here, although Plaintiff's breach of contract claim alleges formation of an

17  express contract with Defendants by virtue of the advertising agreement, the

18  Court will permit Plaintiff to pursue its unjust enrichment claim in the alternative

19  at this stage in the litigation. Accordingly, Defendants' Motion to Dismiss is

20  denied with respect to Plaintiff's third claim.

21      **D.    UCL**

22      Defendants insist that Plaintiff has failed to state a claim under the UCL

23  because the claim is premised exclusively on Defendants' alleged breach of

24  contract, which is insufficient, standing alone, to constitute an unlawful action

25  under the UCL. *See Allied Grape Growers v. Bronco Wine Company*, 203 Cal.

26  App. 3d 432, 451 (1988) (affirming judgment of trial court that plaintiff violated

27  UCL based on breach of contract where evidence demonstrated that defendant's

28  actions were also unfair and fraudulent). The scope of the UCL is extremely

7

1    broad, however, and has been described as "sweeping." *Cel-Tech*

2    *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163,

3    179 (1999). The statute creates a cause of action for unfair competition, which is

4    defined as "any unlawful, unfair or fraudulent business act or practice and unfair,

5    deceptive, untrue or misleading advertising." Cal. Bus. & Prof Code § 17200. As

6    the court explained in *Gafcon, Inc. v. Ponsor & Assocs.*:

7              Virtually any law can serve as the predicate for a Business and
               Professions Code section 17200 action; it may be civil or criminal,
8              federal, state or municipal, statutory, regulatory, or court-made. It is
               not necessary that the predicate law provide for private civil
9              enforcement. Business and Professions Code section 17200
               "borrows" violations of other laws and treats them as unlawful
10             practices independently actionable under section 17200 *et seq.*
               Moreover, determination of whether a business practice or act is
11             "unfair" within the meaning of the UCL entails examination of the
               impact of the practice or act on its victim, balanced against the
12             reasons, justifications and motives of the alleged wrongdoer. In
               brief, the court must weigh the utility of the defendant's conduct
13             against the gravity of the harm to the alleged victim. In general the
               "unfairness" prong has been used to enjoin deceptive or sharp
14             practices. This court has held that an "unfair" business practice
               occurs when it offends an established public policy or when the
15             practice is immoral, unethical, oppressive, unscrupulous or
               substantially injurious to consumers.
16
     98 Cal. App. 4th 1388, 1426 n.15 (2002) (internal citations and quotations
17
     omitted).[2]
18

19   _____

20          [2] Defendants argue that, under *Cel-Tech Communications*, a more narrow definition of

21   "unfair" applies in this context. Specifically, that the UCL extends only to "conduct that threatens

22   an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

23   its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens

24   or harms competition." 20 Cal. 4th at 187. The court in *Cel-Tech Communications* was careful to

25   delineate, however, that this rule applied only "[w]hen a plaintiff who claims to have suffered injury

26   *from a direct competitor's* 'unfair' act or practice invokes section 17200 . . . ." *Id.* As Plaintiff and

27

28   Defendants are not direct competitors, the Court finds *Cel-Tech Communications* more limited

1     The Court finds that Plaintiff has alleged adequate facts to state a claim for

2 violation of the UCL for unfair practices. According to the Complaint:

3 Defendants have knowledge of and the means to prevent the actions of Adware

4 Affiliates; Defendants derive unearned and potentially fraudulent profits from

5 Plaintiff because of the alleged machinations of its Adware Affiliates;

6 Defendants also fail to disclose the extent to which Defendants will overcharge

7 advertisers such as Plaintiff as a result of Adware Affiliates' actions and

8 Defendants' failure to accurately track qualifying transactions. Although these

9 actions may prove fair once the Court considers the full contract between the

10 parties and the alleged express disclaimer therein, at this stage the Court must

11 deny Defendants' Motion to Dismiss as to Plaintiff's UCL claim.

12     ***E.***   ***Plaintiff's Alter Ego Allegations against ValueClick and Be Free***

13     Defendants argue that the complaint does not allege any contract between

14 Plaintiff and either ValueClick or Be Free and that those defendants should be

15 dismissed from the action. Plaintiff responds that Value Click and Be Free are

16 the alter egos of Commission Junction. Determining whether an alter ego exists

17 depends on the circumstances of each particular case and is seen as an issue for

18 the trier-of-fact. *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212

19 (1992). Under California law, "(i)ssues of alter ego do not lend themselves to

20 strict rules and prima facie cases. Whether the corporate veil should be pierced

21 depends upon the innumerable individual equities of each case." *United States v.*

22 *Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977).

23 However, there are two general requirements to be satisfied before such a

24 determination can be made: "(1) That there be such unity of interest and

25 ownership that the separate personalities of the corporation and the individuals

26 no longer exist, and (2) if the acts are treated as those of the corporation alone, an

27

28 definition of "unfair" does not apply to Plaintiff's UCL claim.

9

1  inequitable result will follow." *Platt v. Billingsley*, 234 Cal. App. 2d 577, 582

2  (1965); *First W. Bank and Trust Co. v. Bookasta*, 267 Cal. App. 2d 910, 915

3  (1968); *Automotriz Del Golfo De California v. Resnick*, 47 Cal.2d 792, 796, 306

4  P.2d 1, 3 (1957).

5       A bare "allegation that a corporation is the alter ego . . . is insufficient to

6  justify the court in disregarding the corporate entity in the absence of allegations

7  of facts from which it appears that justice cannot otherwise be accomplished."

8  *Vasey v. California Dance Co.*, 70 Cal. App. 3d 742, 749 (1977).      The Court

9  may consider a variety of factors to help determine whether both prongs of this

10 test have been satisfied. *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210

11 Cal. App. 2d 825, 838 (1962); *Bookasta*, 267 Cal. App. 2d at 915. As to unity of

12 interest, ownership and dominance of the corporation, although not dispositive,

13 have been shown as factors that favor the piercing of the corporate veil. *U.S. v.*

14 *Healthwin-Midtown Convalescent Hospital and Rehabilitation Center, Inc.*, 511

15 F. Supp. 416 (C.D. Cal. 1981); *Associated Vendors, Inc. v. Oakland Meat Co.*,

16 210 Cal.App.2d 825, 837 (1963); *McCombs v. Rudman*, 197 Cal.App.2d 46

17 (1961). Other factors include: "commingling of funds and other assets . . . the

18 treatment by an individual of the assets of the corporation as his own . . . sole

19 ownership of all of the stock in a corporation by one individual or the members

20 of a family . . . [and] the use of a corporation as a mere shell, instrumentality or

21 conduit for a single venture or the business of an individual." *Associated*

22 *Vendors* at 838-39.

23       As to the second 'inequitable result' factor, the alter ego doctrine is in

24 essence an equitable doctrine where the basic motivation is to assure a just and

25 equitable result. *Alexander v. Abbey of the Chimes*, 104 Cal. App.3d 39, 48

26 (1980). In *Alexander*, the court found that the net effect of the transaction was to

27 leave the company as "a hollow shell without means to satisfy its existing and

28 potential creditors." *Id.* In *Bookasta*, allegations sufficient to state a cause of

1    action on the alter ego theory included allegations that "the individuals . . .

2    'dominated' the affairs of the corporation; that a 'unity of interest and ownership'

3    existed . . . that the corporation [was] a 'mere shell and naked framework' for

4    individual manipulations; that its income was diverted to the use of the

5    individuals; that the corporation was . . . inadequately capitalized . . . and that

6    adherence to the fiction of separate corporate existence would, under the

7    circumstances, promote injustice." *Bookasta*, 267 Cal. App. 2d at 915-16.

8        In the instant case, Plaintiff has alleged that ValueClick, Be Free and

9    Commission Junction have a unity of interest and ownership. (Complaint ¶76).

10   Defendants are all alleged to be officers, directors, partners, and representatives

11   of each of the other Defendants. (Complaint ¶77). Plaintiff has further alleged

12   that Commission Junction and Be Free are both wholly owned subsidiaries of

13   ValueClick. (Complaint ¶¶3-5). Both ValueClick and BeFree's websites direct

14   its users to Commision Junction's website. (Complaint ¶¶ 75-76).  Finally,

15   Plaintiffs allege ValueClick, Be Free and Commission Junction all engage in

16   sales and management of each other's indistinguishable affiliate marketing

17   management programs. (Complaint ¶¶7, 76).  For purposes of the instant motion,

18   Plaintiff has pleaded sufficient allegations to show Defendants have a unity of

19   interst and ownership.  Furthermore, based on the allegations in the complaint, if

20   ValueClick and Be Free were allowed to escape liability, an inequitable result

21   would follow.   Accordingly, Plaintiff has set forth "a short and plain statement

22   of the claim showing that the pleader is entitled to relief" under an alter ego

23   theory of liability. Fed. R. Civ. P. 8(b).

24   **II.    Motion to Strike**

25       Although Defendants' Motion to Strike asks the Court to strike Plaintiff's

26   prayer for punitive damages, the Court granted the parties' request that Plaintiff

27   be allowed to withdraw the demand, thereby mooting that portion of the Motion.

28   *See* July 2, 2007, Stipulation and Order for Plaintiff's Withdrawal of Prayer for

1 | Punitive Damages without Prejudice (docket no. 19). The remaining portion of

2 | Defendants' Motion to Strike argues that Plaintiff's third cause of action,

3 | alleging that Defendants violated California's Unfair Competition Law (UCL),

4 | California Business and Professions Code § 17200 *et seq.*, does not support

5 | Plaintiff's prayer for "disgorgement."

6 |       Federal Rule of Civil Procedure 12(f) provides that a court, upon motion or

7 | *sua sponte*, "may order stricken from any pleading any insufficient defense or

8 | any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of

9 | a 12(f) motion to strike is to avoid the expenditure of time and money that must

10 | arise from litigating spurious issues by dispensing with those issues prior to trial .

11 | . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)

12 | (internal citation omitted). Motions to strike may therefore be granted "if 'it is

13 | clear that the matter to be stricken could have no possible bearing on the subject

14 | matter of the litigation.'" *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal.

15 | 2005) (quoting *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D.

16 | Cal. 1992)). However, courts generally view motions to strike with disfavor

17 | because they impose a "drastic remedy," 2 *Moore's Federal Practice* §12.37[1]

18 | (Matthew Bender 3d ed.), and are "often used as delaying tactics." *Schwarzer,*

19 | *Tashima & Wagstaffe, Federal Practice & Procedure Before Trial* §9.375 (2d ed.

20 | 1990). For this reason, courts view the challenged pleading in the light most

21 | favorable to the non-moving party and frequently require a showing of prejudice

22 | by the moving party. *See, e.g., Montecino v. Spherion Corp.,* 427 F. Supp. 2d

23 | 965, 967 (C.D. Cal. 2006) ("[A] court must deny the motion to strike if any doubt

24 | exists whether the allegations in the pleadings might be relevant in the action.")

25 | (citation omitted); *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)

26 | (citing *Schwarzer* at §§9:376, 9:407).

27 |       Although it is true, as Defendants note, that the California Supreme Court

28 | has held that one form of disgorgement, defined negatively as "nonrestitutionary

1  disgorgement," is not available under the UCL in private actions, it does not

2  follow that "disgorgement" is similarly an impermissible remedy. *Korea Supply*

3  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003). The Complaint

4  does not request the prohibited form of relief, "nonrestitutionary disgorgement,"

5  and the Court denies Defendants' request to strike Plaintiff's prayer for

6  "disgorgement" for failing to more specifically request the available subset of

7  recoverable damages, "restitutionary disgorgement." As the law is clear that

8  nonrestitutionary disgorgement is not available, it would have been superfluous

9  for Plaintiff to pray for "restitutionary" disgorgement. Moreover, Plaintiff has

10  further clarified in its Opposition that it is not seeking nonrestitutionary

11  disgorgement.

12      The Court finds that Defendants have failed to meet their burden in

13  establishing that Plaintiff's request for disgorgement is an immaterial or

14  impertinent matter. Further, the Court is not persuaded that a failure to strike

15  Plaintiff's prayer for disgorgement will lead to an unforeseen broadening of the

16  scope of UCL, erode contract law, or engender constitutional due process

17  concerns. Accordingly, the Court denies Defendants' Motion to Strike.

18                          **CONCLUSION**

19      For the foregoing reasons, the Court grants Defendants' Motion to Dismiss

20  with respect to Plaintiff's second cause of action for negligence and denies

21  Defendants' Motion to Dismiss in all other respects. The Court also denies

22  Defendants' Motion to Strike.

23  **IT IS SO ORDERED.**

24  Dated: August _24_, 2007

25

26                          FLORENCE-MARIE COOPER, JUDGE

27                          UNITED STATES DISTRICT COURT

28